UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 05-186 |
| KERRY DECAY, ET AL | SECTION: "J"(1) |

## ORDER AND REASONS

Before the Court is the Government's **Motion to Disqualify Counsel**. Rec. Doc. 33. The Government seeks to disqualify Arthur Lemann, III and Michael Ellis as counsel for Kerry DeCay and Reginald Walker, respectively, arguing that these attorneys' former representation of two Government witnesses – Howard Moses in the case of Lemann and William Pappas in the case of Ellis – has created an actual conflict of interest which the prior clients have not waived. The Government supplemented the motion alleging an additional conflict due to the fact that Michael Ellis' partner, Julian Murray, currently represents Randall Moore, a defendant in a related criminal case who will also be a prosecution witness in the instant case. Defense counsel oppose

the motion, arguing that there is no conflict, that defendants are willing to waive any conflict that would prejudice them, and in Mr. Walker's case, that Mr. Ellis will not cross-examine Mr. Pappas, and he waives any appellate issue with respect to the failure to cross-examine Mr. Pappas.

The Court heard oral argument on the motion on August 3, 2005, and subsequently ordered the Government to file, in camera and under seal, transcripts of the witnesses' grand jury testimony, transcripts of the witnesses' interviews with the Government or any of its agents, and any debriefing notes or notes of other interviews with the witnesses by August 15, 2005. By the same date, Mr. Ellis and Mr. Lemann were ordered to file, in camera and under seal, any notes of interviews with the former clients in question, either taken by themselves or members of their firm, and if those were unavailable, affidavits of the interviewing attorney's best recollection of the contents of the conversations with the witnesses in question.[1]  Having

---

[1] Defense counsel has suggested that the Court's procedure in requiring the submission of the listed materials – the only method the Court can conceive of to categorically resolve the question whether the prior representation creates a non-waivable conflict in this case – is improper because the in camera disclosure to the Court results in a waiver of the attorney-client privilege.  To the contrary, numerous courts have required the in camera submission of privileged materials for a variety of reasons, chief among them determining whether a privilege exists. See, e.g., United States v. Zolin, 491 U.S. 554 (1989)(in camera review required to determine if crime-fraud exception applies;

exhaustively reviewed all the materials submitted, and having
considered the indictment in detail, the Court finds that
attorneys Lemann and Ellis have neither a conflict nor a serious
potential of a conflict that could not be waived, and the
Government's motion must therefore be denied.

## BACKGROUND

On June 16, 2005, the Government filed a 37-page indictment
against DeCay and Walker and two other defendants.  The
indictment alleges, <u>inter alia</u>, illegal acts by the defendants in
connection with three contracts between the City of New Orleans
and Johnson Controls.  The objective of the contracts was to
increase energy efficiency through the replacement and upgrading
of fixtures and equipment such as chillers, boilers, light
fixtures, light bulbs, window tinting, and controls.  As a result
of the replacements and upgrades, the City was supposed to
achieve energy savings that would pay for all of the costs

---

United States v. Nixon, 94 S. Ct. 3090 (1974)(in camera
inspection required to determine if executive privilege applies);
United States v. Parker, 586 F.2d 422 (5th Cir. 1978)(in camera
review to determine existence of attorney-client privilege);
Lasker v. Stevens Graphics Corp., 1994 WL 389467 (N.D. Tex. Apr.
29, 1994)(same); see also, Paul R. Rice, The Eroding Concept of
Confidentiality Should Be Abolished, 47 DUKE L.J. 853, 898 n. 100
(1998)(collecting cases).  In at least one case, the trial court
ordered the in camera submission of the same materials ordered
herein for the same reason – to resolve the question whether
multiple representation created a conflict.  See, United States
v. Morrell-Corrada, 343 F. Supp.2d 80 (D. Puerto Rico, 2004).

associated with the contracts.  The savings failed to materialize
and the City ended up having to pay $3.2 million each year,
which it paid with funds borrowed by the sale of bonds.

　　According to the indictment, DeCay, on behalf of the City of
New Orleans, oversaw much of the work done by Johnson Controls,
and negotiated Phases II and III of the City's agreements with
Johnson Controls.  Walker owned and operated Moss Creek
Development Company, which entered into a subcontract with
Johnson Controls.  Among other things, the indictment alleges
that the defendants conspired to defraud the City by causing the
City to overpay Johnson Controls in order to divert a portion of
the overpayments to themselves.

　　The Government contends that a conflict of interest is
present because it will be relying in part on the testimony of
Moses and Pappas to convict DeCay and Walker, so "[i]f Mr. Lemann
and Mr. Ellis stay in the case ignoring their loyalty to their
former clients, any conviction of their current clients would be
subject to post-conviction attack."  Rec. Doc. 33 at 3.  Further,
the Government argues that Randall Moore "will be providing
direct evidence of the payment of kickbacks to Mr. Ellis'
client's co-defendant as part of the overall conspiracy charged
against all of these defendants."  While the Government's motion
is not explicit as to whether it seeks to preempt prejudice to

the former clients or the current clients, its preoccupation with
the attorneys' duty of loyalty to Pappas and Moses, the problem
of Pappas and Moses being cross-examined by their former
attorneys, and the Government's insistence that a knowing and
intelligent waiver by the defendants would not obviate the
conflict, all indicate that the motion seeks to preserve the
rights of the former clients and the integrity of the
proceedings.  Nevertheless, the Court's analysis herein also
considers the possibility of prejudice to Mr. Lemann's and Mr.
Ellis's current clients.

<u>**DISCUSSION**</u>

The Sixth Amendment guarantees that "in all criminal
prosecutions the accused shall enjoy the right . . . to have the
Assistance of Counsel for his defence."  Moreover, "the right to
select and be represented by one's preferred attorney is
comprehended by the Sixth Amendment."  <u>Wheat v. United States</u>,
486 U.S. 153, 159 (1988).  However, the right is not absolute:
the presumption in favor of a defendant's counsel of his choice
"may be overcome not only by a demonstration of actual conflict
but by a showing of serious potential for conflict."  <u>Id.</u> at 164.
This is because notwithstanding the guarantees of the Sixth
Amendment, "[f]ederal courts have an independent interest in
ensuring that criminal trials are conducted within the ethical

5

standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160. "Whether and when the defendant's right must yield to that higher interest is committed to the sound discretion of [the trial court]." United States v. Morris, 785 F. Supp. 1238, 1240 (N.D. Tex. 1992)(citing United States v. Kitchin, 592 F.2d 900, 903 (5th Cir.), cert. denied, 444 U.S. 843 (1979).

Applying Wheat, "[w]hen an issue of conflict of interest arises, the Court must first determine whether an actual or potential conflict exists.  If such a conflict exists, the Court must ensure that the conflict is either eliminated or waived.  If the conflict cannot be eliminated or waived, the attorney must be disqualified." U.S. v. Edwards, 39 F. Supp. 2d 716, 743 (M.D. La. 1999).[2]  The Court's first task then, is to determine whether an actual or potential conflict exists.

In considering whether a conflict exists which would warrant disqualification, courts look to state and national ethical standards adopted by the court. Babineaux v. Foster, 2005 WL 711604, *1 (E.D. La. Mar. 21, 2005)(citing FDIC v. United States

---

[2]It should be borne in mind, however, that our case is distinguishable from Wheat and (and other situations in which Fed. R. Crim. P. 44 would apply) in that our case does not involve dual representation – that is, it is not a situation involving "two or more defendants [who] have been charged jointly ... or have been joined for trial." Fed. R. Crim. P. 44(c)(1)(A).

<u>Fire Ins. Co.</u>, 50 F.3d 1304, 1311-12 (5th Cir. 1995).  These
rules apply in disqualification motions brought in criminal as
well as civil cases.  <u>Perillo v. Johnson</u>, 205 F.3d 775, 801 (5th
Cir. 2000).  Accordingly, the instant motion must be resolved
with reference to the Local Rules for the Eastern District of
Louisiana, the American Bar Association Model Rules of
Professional Conduct ("ABA Model Rules"), and the Louisiana Rules
of Professional Conduct.  <u>Babineaux</u>, 2005 WL 711604 at *1 (citing
<u>Horaist v. Doctor's Hosp. of Opelousas</u>, 255 F.3d 261, 266 (5th
Cir. 2001)).  The task is simplified by the fact that the Eastern
District of Louisiana has adopted the State of Louisiana's Rules
of Professional Conduct, which are identical to the ABA Model
Rules in all respects relevant to this motion.  <u>See</u>, L.R.
83.2.4E, La. State Bar Art. XVI, ABA Model Rules of Professional
Conduct.

As numerous district courts have recognized, the party
seeking disqualification bears the burden of proving a conflict.
<u>See</u>, <u>e.g.</u>, <u>Babineaux</u>, 2005 WL 711604, *2; <u>Parker v. Rowan
Companies, Inc.</u>, 2003 WL 22208569, *8 (E.D. La. Sept. 23, 2003);
<u>Cramer v. Sabine Transp. Co.</u>, 141 F. Supp. 2d 727, 730 (S.D. Tex.
2001).  Moreover, "[a] disqualification inquiry, particularly
when instigated by an opponent, presents a palpable risk of
unfairly denying a party the counsel of his choosing.  Therefore,

notwithstanding the fundamental importance of safeguarding

popular confidence in the integrity of the legal system, attorney

disqualification . . . is a sanction that must not be imposed

cavalierly." F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1316

(5th Cir. 1995).

### *Conflicts affecting former clients*

Rule 1.9 of the Louisiana Rules of Professional Conduct,

concerning a lawyer's duty to former clients, provides that "[a]

lawyer who has formerly represented a client in a matter shall

not thereafter represent another person in the same or a

substantially related matter in which that person's interests are

materially adverse to the interests of the former client unless

the former client gives informed consent, confirmed in writing."

Moreover,

> [a] lawyer who has formerly represented a client in a
> matter or whose present or former firm has formerly
> represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to
> the disadvantage of the former client except as the[]
> Rules would permit or require with respect to a client,
> or when the information has become generally known; or
>
> (2) reveal information relating to the representation
> except as these Rules would permit or require with
> respect to a client.

In addition to professional conduct rules, courts in this

circuit have also employed a "substantial relationship" test to

guide the conflict inquiry.  Under that test, "[a] party seeking
to disqualify counsel . . . need not prove that the past and
present matters are so similar that a lawyer's continued
involvement threatens to taint the trial.  Rather, the former
client must demonstrate that the two matters are substantially
related."  <u>Edwards</u>, 39 F. Supp. 2d at 734, citing <u>In re American
Airlines, Inc.</u>,972 F.2d 605, 616 (5th Cir. 1992).  <u>Edwards</u> went
on to opine that a substantial relationship "may be found only
after the moving party delineates with specificity the subject
matters, issues and causes of action common to prior and current
representations and the court engages in a 'painstaking analysis
of the facts and precise application of precedent.'" <u>Id.</u> at 734
(quoting <u>American Airlines</u>, 972 F.2d 605).

### ***Conflicts affecting current clients***

     With respect to conflicts affecting current clients, Rule
1.7 of the Louisiana Rules of Professional Conduct provides that:

     a lawyer shall not represent a client if the
     representation involves a concurrent conflict of
     interest.  A concurrent conflict of interest exists if:

     (1) the representation of one client will be directly
     adverse to another client; or

     (2) there is a significant risk that the representation
     of one or more clients will be materially limited by
     the lawyer's responsibilities to another client, a
     former client or a third person or by a personal
     interest of the lawyer.

In addition to the professional conduct rules, jurisprudence examining conflicts in the specific context of criminal cases has held that a conflict exists when "counsel's allegiance to the accused [would be] compromised by competing obligations owed to other clients." <u>Perillo v. Johnson</u>, 205 F.3d 775, 798 (5th Cir. 2000)(other citations omitted).  The Fifth Circuit has recognized that a competing obligation may be present when "an attorney has confidential information that is helpful to one client but harmful to another."  <u>Id.</u> (citing <u>United States v. Placente</u>, 81 F.3d 555, 559 (5th Cir. 1996)(collecting cases).  The Fifth Circuit has also "relied upon the relationship between the subject matter of the multiple representations when determining whether counsel was burdened by an actual conflict."  <u>Id.</u>, citing <u>Russell v. Lynaugh</u>, 892 F.2d 1205, 1214 (5th Cir. 1989)(other citations omitted).  Also considered is "the temporal relationship between the prior and subsequent representations. Where the prior representation has not unambiguously been terminated, or is followed closely by the subsequent representation, there is more likely to be a conflict arising from defense counsel's representation of the first client."  <u>Id.</u> (citations omitted).  "Where, on the other hand, defense counsel's prior representation unambiguously terminated before the second representation began, the possibility that defense

10

counsel's continuing obligation to his former client will impede his representation of his current client is generally much lower." Id. at 798-99 citing Vega v. Johnson, 149 F.3d 354 (5th Cir. 1998), cert. denied, 525 U.S. 1119 (1999).

The Fifth Circuit "has also relied upon the character and extent of the prior representation. Where the prior representation involved a formal and substantial attorney-client relationship, a finding of actual conflict is more likely." Id. at 799 (citations omitted). "Where, however, defense counsel's involvement in the prior representation was either transient or insubstantial, [the court has] been less inclined to find an actual conflict." Id. (citations omitted). "Thus, whether the facts of a particular case give rise to an actual conflict depends, not so much upon the label used to define the attorney's conflict, as upon these and any other factors that illuminate whether the character and extensiveness of the prior representation were such that counsel is prevented 'by his interest in another's welfare from vigorously promoting the welfare of his [current] client.'" Id. (citing Vega, 149 F.3d at 360). In addition, the "substantial relationship" test may also be applied in examining conflicts affecting current clients. Id. at 800 (citing In re American Airlines, 972 F2d 605, 614-16 (5th Cir. 1992)).

11

Applying these rules and precedents, the undersigned has determined that in the instant case, no actual or potential conflict is present that would prejudice either the former or current clients of Lemann and Ellis.

### *Arthur Lemann, III's representation of Howard Moses and Kerry DeCay.*

It is undisputed that Lemann's son, a member of Lemann's firm, represented Howard Moses when he was interviewed by the FBI about his contract for consulting relative to the Johnson Controls contract at issue in the indictment.  The Government contends that it is inconceivable that Lemann's office did not have further privileged conversations in connection with this representation, and that Lemann will be required to cross-examine Moses and explore those privileged matters, resulting in a violation of Lemann's duty of loyalty to his former client, Howard Moses.

The Court recognizes that "[t]he law presumes that a lawyer receives confidential communications in the course of his representation of a client."  United States v. Morris, 785 F. Supp. 1238, 1240 (citing United States v. Shepard, 675 F.2d 977, 980 (8th Cir. 1982); United States v. Cheshire, 707 F. Supp. 235, 239 (M.D. La. 1989).  Nevertheless, this presumption may be rebutted; for instance, when a defense attorney represents the

former client/witness in preliminary matters only and credibly
denies that he gained any confidences from the witness during the
representation.  Id.  In Morris, the trial judge found that the
attorney the Government wished to have disqualified due to prior
representation of prosecution witness, as "one of its officers
and subject to severe discipline for prevarication, [informed the
court] that he possessed no confidences" from the former
client/witness.  Id.  The court was persuaded that the attorney's
assertions were credible, and therefore found no actual conflict
of interest.  Id.

        In the present case, the Court has gone beyond Mr. Lemann's
representations and has reviewed in camera Mr. Lemann's office
file generated during its prior representation of Moses, Moses'
grand jury testimony, and the notes of Government interviews with
him, as well as the indictment against DeCay, and has concluded
that DeCay's interests are not materially adverse to Moses'
interests.  As pointed out by defense counsel, Moses is neither a
victim in the indictment, a co-defendant, a co-conspirator, an
unindicted co-conspirator, a participant, or a witness to any of
the alleged criminal transactions that DeCay is alleged to have
engaged in.  In fact, Moses is not referred to in the indictment
at all.  Moreover, the materials submitted in camera do not
suggest that DeCay's defense would be buttressed by eliciting any

testimony from Moses that could prejudice Moses, and Lemann's office file on Harold Moses does not reveal any information that could be used to Moses' disadvantage.[3]  Thus, the Court finds that Lemann has successfully rebutted the presumption that he is in possession of confidences that would create an actual conflict, or likely give rise to a potential conflict, that would affect Moses.  Put simply, it does appear that Lemann's allegiance to Moses is or could be compromised by any competing obligation owed to DeCay.

Similarly, the Court has determined that Lemann's responsibility to DeCay will not be materially limited by his firm's prior representation of Moses; that the prior representation has been unambiguously terminated; and that Lemann's firm's brief representation of Moses in connection with the FBI questioning was, relatively speaking, transient and insubstantial.  Accordingly, the Government has also failed to demonstrate that an actual or potential conflict exists that would compromise Lemann's obligation to DeCay, so he need not be disqualified from that representation.

### _Michael Ellis' representation of William Pappas and Reginald Walker._

---

[3]Because of the privileged and confidential nature of the submissions, the Court does not quote directly from them in this order.

Ellis represented Pappas in connection with a 2002 conviction for committing mail fraud against the City of New Orleans.  According to the Government, Pappas will be testifying regarding bribes given *to DeCay* in an effort to secure city contracts and Johnson Controls work through DeCay.  Thus, the Government argues, Ellis will be unable to cross-examine his former client, because doing so would require him to exploit the confidences of his former client to benefit his current one. Ellis has responded that the public record reflects the fact that no conflict exists since the Pappas and Walker matters are entirely unrelated.  Walker has further agreed that Ellis will not cross-examine Pappas, if he is called as a witness, and Walker has voluntarily, knowingly, and intelligently waived any ineffective assistance of counsel claims for purposes of appeal for failure to cross-examine.

The Court acknowledges that if Ellis were seeking to represent DeCay, he would have a problem:  since Pappas will be testifying to bribes he allegedly gave DeCay, their interests would be materially adverse.  However, Ellis does not seek to represent DeCay, but Reginald Walker, and as noted by the defense, the Pappas case did not refer to any City employees except for Wallace Schief, and neither Walker, Walker's company

Moss Creek, nor Johnson Controls were mentioned or implicated in
Pappas' indictment.  Rather, the evidence submitted reflects that
Walker had never met Pappas or the principals or employees of
Energy Management Services.  Thus, no confidences regarding
Walker were shared by Pappas with Ellis during the course of the
prior representation.  In addition, Walker was indicted 22 months
after the Pappas matter was concluded.

These facts, together with the contents of the in camera
submissions (especially Pappas' grand jury testimony) indicate
that Pappas' interests are in no way materially adverse to
Reginald Walker's.  There appears to be no relationship between
the two representations, much less a substantial one.  As a
result, it simply does not appear that Ellis' allegiance to
Pappas is or could be compromised by any competing obligation
owed to Walker.

Nor does it appear that Ellis' representation of Walker
would be materially limited by his former representation of
Pappas.  As already noted, the subject matters of the
representations are unrelated.  Moreover, the prior
representation has been unambiguously terminated and was
terminated 22 months prior to the indictment herein.
Accordingly, the Government has also failed to demonstrate that
an actual or potential conflict exists that would compromise

16

Ellis' obligation to Walker, so he need not be disqualified from
that representation.

### *Julian Murray's representation of Randall Moore*

As noted above, the Government supplemented its original
motion with a memorandum arguing that an additional reason to
disqualify Ellis exists because Ellis' law partner, Julian
Murray, currently represents a witness in this case, which was
later learned to be Randall Moore.

"While lawyers are associated in a firm, none of them shall
knowingly represent a client when any one of them practicing
alone would be prohibited from doing so" by the rules governing
duties to former and current clients.  Louisiana Rule of
Profession Conduct 1.10.  Thus, Murray's representation of Moore
is imputed to Ellis for purposes of the conflicts analysis.
Ellis may thus be viewed as concurrently representing both Moore
and Walker, after having previously represented Pappas.

As a threshold matter, it appears to the Court that any
conflict problem this created would require the disqualification
of Murray, the later retained attorney, rather than Ellis.  In
addition, the Court notes that the Government's memorandum is
concerned only with whether Murray's representation of Moore
conflicts with Ellis' representation of Walker – that is, whether
Moore's interests are materially adverse to Walker's.  However,

17

the representation also raises the question of whether Moore's interests are materially adverse to Pappas' interests.

Nevertheless, the same rationale supporting the finding that Ellis' successive representations of Pappas and Walker would not result in a conflict applies to the Moore/Walker representation: Moore's testimony appears to be materially adverse to DeCay, but not to Walker.  Further, there appears to be no connexity at all between Moore and Pappas.  Moore has been indicted in a separate case, 05-236, pending in another section of this court.  While the Government argues that Moore will be giving direct evidence of the payment of kickbacks to Mr. Ellis' client's co-defendant (DeCay) as part of the overall conspiracy, once again, neither Ellis (nor Murray) seeks to represent DeCay.  The Court has carefully reviewed Moore's grand jury testimony and the notes of Government interviews with him, and it simply does not appear that his interests are materially adverse to Pappas' or Walker's; nor does it appear that Ellis' former client, Pappas would be disadvantaged by any information possessed by Moore.  Similarly, there is no support for the conclusion that Ellis' representation of Walker would be materially limited by Murray's representation of Moore, and vice versa.  In sum, it simply does not appear that Ellis' duty of loyalty to his current or former clients is affected at all by Murray's representation of Randall Moore.

18

Accordingly, for the foregoing reasons, the Government's **Motion to Disqualify Counsel** (Rec. Doc. 33) should be and is hereby **DENIED.**

New Orleans, Louisiana, this ___7th___ day of November, 2005.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE